**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-03099-RM-CBS

DALE M. ARDEN,

    Plaintiff,

v.

DOUGLAS N. DARR, in his official capacity as Sheriff for County of Adams, Colorado;
LILIANA BONDELL, Deputy Sheriff, in her professional capacity as Deputy Sheriff for County of Adams, and her personal capacity; and
JOHN DOES 1 & 2 in their professional and personal capacities,

    Defendants.

---

## ORDER
---

This matter is before the Court on Defendants Sheriff Douglas N. Darr and Deputy Sheriff Liliana Bondell's motion for summary judgment (ECF No. 20) on each of Plaintiff Dale M. Arden's claims under 42 U.S.C. § 1983 ("Section 1983") against Defendants for violating his Fourth Amendment (via the Fourteenth Amendment) rights (ECF Nos. 4, 30).

For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment.

**I.      LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon

whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [him]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

## II. BACKGROUND

### A. Procedural Background

On November 28, 2012, this case was removed from state court. (ECF No. 1.) The Amended Complaint (ECF No. 4) has four "claims for relief" against two named and two unnamed Defendants. A liberal reading of the Amended Complaint informs the Court that Plaintiff's Section 1983 claims are based on (1) "civil theft" (ECF No. 4 at ¶¶ 33-36); (2) "conspiracy" (ECF No. 4 at ¶¶ 37-51); (3) unlawful search (ECF No. 4 at ¶¶ 52-54); and (4) unlawful seizure (ECF No. 4 at ¶¶ 52-54). No executed return of summons or waiver of service has been filed for either of the John Doe Defendants. (*See* ECF Dkt.)

On August 30, 2013, Defendants Bondell and Darr filed their motion for summary judgment. (ECF No. 20.) The matter is fully briefed and ripe for adjudication. (*See* ECF Nos. 25, 26.)

On December 24, 2013, Magistrate Judge Craig B. Shaffer entered a "Final Pretrial Order" in this matter. (ECF No. 30.) The Final Pretrial Order identifies that Plaintiff's Section 1983 claims are predicated upon an unlawful search and seizure of his home by the named Defendants. (ECF No. 30 at 2-3.) The Final Pretrial Order contains no claim for conversion. (*See generally* ECF No. 30.) The Final Pretrial Order contains no claim for civil conspiracy. (*See generally* ECF No. 30.)

### B.   Undisputed Material Facts[1]

The facts as recited below are based on adequate citations to the record which would be admissible at trial. The facts are recited in a light most favorable to the non-moving party.

On August 10, 2010, Deputy Sheriff Bondell of the Adams County Sheriff's Office was dispatched in response to a suicidal party/overdose report to 14684 Jackson Street in Adams County. (ECF No. 20-1 at 12, Bondell Report.) Paula Moody ("Moody") was the reporting party. (*Id.*) Moody stated that Arden had called her and was slurring his words as he told her that he was taking pills every two hours and would continue to do so because no one cares about him. (*Id.*) The front door was open and Bondell announced her presence prior to entering the residence. (*Id.*) Bondell identified Plaintiff in his bedroom as he was on the phone with Moody. (*Id.*) Bondell checked Plaintiff for weapons and observed that there were several rifles/shotguns

---

[1] In opposition to Defendant's summary judgment motion (ECF No. 20), Plaintiff argues that his "Amended Complaint contains no less than 25 factual allegations referencing unlawful search of Mr. Arden's home, the unlawful seizure of Mr. Arden's firearms and ammunition or the unlawful invasion of Mr. Arden's privacy in his home, effects and possessions, which involve the direct actions of Deputy Bondell and other Defendants." (ECF No. 25 at 6-7.) Plaintiff is correct; the Amended Complaint (ECF No. 4) contains "allegations." But it is Plaintiff's obligation in opposition to a summary judgment motion to present "facts" beyond the pleadings. *1-800-Contacts, Inc.*, 722 F.3d at 1242. Thus, the Amended Complaint is insufficient to present "evidence" sufficient to demonstrate a dispute as to a material fact.

4

in the room. (*Id*.) Plaintiff was unresponsive to Bondell's questions. (*Id*.) During Bondell's questioning, Plaintiff stared blankly and his mouth was dry and foamy. (*Id*.)

Emergency medical technicians ("EMTs") arrived to assist Plaintiff to an ambulance. (*Id*.) Plaintiff could barely walk. (*Id*.) Plaintiff was transported to Good Samaritan Hospital at which point he told hospital staff that he did not want to live. (*Id*.) Bondell placed Plaintiff on a "M-1" hold due to Plaintiff's having suicidal thoughts and his actions as reported by Moody as well as his incoherent and unresponsive state. (*Id*.; ECF No. 20-2, Bondell Dep. 41:25-42:6, 48:12-16, 48:22-49:6; ECF No. 20-4 at 1, Emergency Mental Illness Report and Application.) Section 27-65-105 of the Colorado Revised Statutes (effective April 29, 2010 to June 30, 2011), permits a certified peace officer to initiate a mental health hold on a person who appears to be an imminent danger to himself. C.R.S. § 27-65-105(1)(a)(i).

Bondell checked the "call history" for the address to which she reported and learned that Plaintiff had overdosed on July 31, 2010. (ECF No. 20-1 at 12, Bondell Report.)

Because this was Plaintiff's second suicide attempt in ten days, Bondell determined it was prudent to take custody of eleven rifles, four shotguns, eight pistols, and about 850 rounds of ammunition that were in plain view inside Plaintiff's residence. (*Id*.; ECF No. 20-2, Bondell Dep. 39:4-15, 41:10-13, 40:7-41:19.) Bondell determined that there were no other family members or a responsible party to whom she could release these items and as such, she "booked" them for safekeeping. (ECF No. 20-1 at 12, Bondell Report; ECF No. 20-5 at 7, Interrog. Resp. No. 7.) Bondell removed the firearms and ammunition from the home because she believed the unsecured and loaded weapons potentially presented a danger to the community and to Plaintiff if he should return to the home and remain suicidal. (ECF No. 20-5 at 7, Interrog. Resp. No. 7.)

The evaluating licensed counselor at Good Samaritan Hospital determined that Plaintiff needed hospitalization. (ECF No. 26-1, Behavioral Health Assessment at 4.)

Subsequent to Plaintiff's release from the hospital, the firearms and ammunition removed from Plaintiff's residence were returned to him. (ECF No. 20-3, Arden Dep. 26:3-10.)

Because each search or seizure is case specific, the Adams County Sheriff's Department has policies or procedures only generally relating to the searches and seizures of property. (ECF No. 25-3, Darr Dep. 12:11-14, 44:8-45:2; ECF No. 26-3, Sheriff's Office Policy Manual at 2-3.) The Adams County Sheriff's Department provides training on search and seizure to its deputies. (ECF No. 25-3, Darr Dep. 12:15-13:6.)

## III. ANALYSIS[2,3]

### A. Defendants are Entitled to Qualified Immunity for Claims against Them in Their Individual Capacities

Bondell asserts that she is entitled to judgment as a matter of law on Plaintiff's claims against her in her personal capacity. (ECF No. 20 at 6-12.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223,

---

[2] Plaintiff's Complaint also named as Defendants Deputy Sheriff John Doe No. 1 and Deputy Sheriff John Doe No. 2. (ECF No. 4 at 1.) To the extent Plaintiff's claims are against any unnamed individuals, those claims suffer from the same infirmities as identified in this Order and therefore, judgment for those Defendants is appropriate on the bases of qualified immunity and lack of municipal liability. The Court recognizes Plaintiff, in response to Defendants' summary judgment motion, states that "Sergeant Louis A. Dixon" is John Doe No. 1. (ECF No. 25 at 1.) Plaintiff, however, never amended his complaint to identify the unnamed Defendant.

[3] To the extent Defendants' motion for summary judgment (ECF No. 20) does not address claims that were in Plaintiff's Amended Complaint (ECF No. 4) but not in the Final Pretrial Order (ECF No. 30), those claims are waived. The Final Pretrial Order "supersedes the pleadings and controls the subsequent course of litigation." *Hullman v. Bd. of Trs. at Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). Further, Defendants' motion for summary judgment asserts that Plaintiff did not intend to pursue his claim for conversion (ECF No. 20 at 8 n.2) and Plaintiff does not controvert such assertion in opposition to Defendants' motion for summary judgment (*see generally* ECF No. 25). The Final Pretrial Order (ECF No. 30) also does not identify unnamed Defendants. Therefore, claims against those unnamed and unidentified Defendants are not properly before the Court. *See Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012) (unpublished) (affirming dismissal of claims against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does).

231 (2009) (internal quotation marks and citation omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the right violated was "clearly established" at the time of the violation. *Id*. at 230-31. The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *accord Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

1. No Fourth Amendment Violation Occurred

The Fourth Amendment to the United States Constitution states

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. The United States Supreme Court has repeatedly recognized that only *unreasonable* searches and seizures are proscribed. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001); *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). In *Mincey v. Arizona*, 437 U.S. 385, 392 (1978), the Supreme Court held that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." In *Mincey*, the Supreme Court fashioned the "emergency aid exigency" which is informed by the "practical recognition of critical police functions quite apart from or only tangential to a criminal investigation." *United States v. Najar*, 451 F.3d 710, 714-15 (10th Cir. 2006). The Tenth Circuit Court of Appeals recognizes that

> police are also expected to reduce the opportunities for the commission of some crimes through preventative patrol and other measures, aid individuals who are in

7

>danger of physical harm, assist those who cannot care for themselves, resolve conflict, create and maintain a feeling of security in the community, and provide other services on an emergency basis.

*Id.* at 715. The Fourth Amendment's protection against *unreasonable* seizures extends to real property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993); *Presley v. City of Charlottesville*, 464 F.3d 480, 483-84 (4th Cir. 2006). "To prevail on a seizure claim, a plaintiff must prove that the government unreasonably seized property." *Presley*, 464 F.3d at 485 (citation omitted). The Fourth Amendment governs temporary seizures. *Presley*, 464 F.3d at 487 (citations omitted).

      a.  *Exigent Circumstances*

"The existence of exigent circumstances is a mixed question of law and fact." *Najar*, 451 F.3d at 717 (internal quotation and citation omitted). It is undisputed that Bondell did not obtain a warrant before entering Plaintiff's residence and seizing his firearms. Therefore, unless an exception to the warrant requirement applies, Bondell's entry into Plaintiff's home is presumptively unreasonable under the Fourth Amendment. *See id.* (citation omitted). The government bears the heavy burden of proving the exigency exception to the warrant requirement applies. *See id.* (citations omitted). The Tenth Circuit instructs that there is a two-part test to determine whether exigent circumstances exist, whether: (1) the officer has an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search and seizure is reasonable. *Id.* at 718.

    (1)  Bondell Had Reasonable Grounds to Believe There Was an Immediate Need to Protect Plaintiff's Life

The Court evaluates whether Bondell was confronted with reasonable grounds to believe there was an immediate need to protect Plaintiff's life or the safety of others "'guided by the

8

realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'" *Id*. at 718-19 (citation omitted). "The inquiry determining the existence of an exigency is essentially one of reasonable belief." *Id*. at 719 (citation omitted). The Tenth Circuit recognizes that 911 calls are the predominant means of communicating emergency situations. *Id*. at 719.

Bondell responded to an emergency 911 call at Plaintiff's residence. (ECF No. 20-1 at 12, Bondell Report.) Upon arriving at the residence, Bondell found Plaintiff to be unresponsive. (ECF No. 20-2, Bondell Dep. 41:25-42:6, 48:12-16, 48:22-49:6.) At the residence, Bondell found a large cache of firearms as well as ammunition in the home and collected and removed them for the community's safety and Plaintiff's safety should he return home and remain suicidal. (ECF No. 20-2, Bondell Dep. 39:4-4; ECF No. 20-5 at 7, Interrog. Resp. No. 7.) The Court concludes that Bondell reasonably believed there existed an immediate need to protect Plaintiff's life and the community's safety which justified her entry into Plaintiff's home for the purpose of providing emergency aid and temporarily seizing his weapons.

        (2)  The Manner and Scope of the Search and Seizure Were Reasonable

Bondell confined her search to only those places in the home where a threat could be present. (ECF No. 20-2, Bondell Dep. 41:10-13.) As Bondell searched the home, she seized only those weapons in plain sight. (ECF No. 20-2, Bondell Dep. 40:7-41:19.) In sum, the Court concludes that Bondell had reasonable grounds to believe there was an immediate need to investigate concerns for the life or safety of another and reasonably effected the search and seizure of weapons to protect the community from unsecured weapons while Plaintiff was temporarily placed under medical care. Additionally, her concern for Plaintiff's safety immediately upon release from hospitalization was also reasonable.

Thus, the search of the home and seizure of firearms were lawful as exigent circumstances existed.

        2.        No Conspiracy Claim Can Be Established Since There Was Not an Underlying Constitutional Violation

To prevail on a Section 1983 conspiracy claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (internal citations omitted). Because Plaintiff has failed to establish a Fourth Amendment violation, his conspiracy claim against Defendants necessarily fails. *See Snell*, 920 F.2d at 701.

    **B.**    **Because There Exists No Municipal Liability, Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Claims against Them in Their Official Capacities**

In addition to bringing suit against Darr and Bondell in their individual capacities, Plaintiff also names Darr and Bondell as liable in their official capacities. (ECF No. 4.) "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) (citation omitted).

The Supreme Court in *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978) held that a municipality can be liable under Section 1983 only where the municipality itself causes the constitutional violation at issue. And the Supreme Court has further held that "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under [Section] 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (internal citations omitted). A practice may be an official policy or custom under Section 1983 "if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately

indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Plaintiff concedes that the Adams County Sheriff's Office has no policy, custom, practice, or final decision by a municipal policymaker related to specific searches and seizures of property. (ECF No. 25 at 9.) The Adams County Sheriff's Office has a policy related to searches and seizures which is based on "reasonableness" and that comports with the Fourth Amendment. (*See* ECF No. 26-3, Sheriff's Office Policy Manual at 2-3.) Plaintiff argues that it is the failure to establish such specific policies that leads to the constitutional violation. (ECF No. 25 at 9.) This argument misses the mark as described previously. Further, the decision to search and seize property is made by the individual police officer. (ECF No. 25-3, Darr Dep: 44:8-45:2.) And Plaintiff fails to show (or even argue) that the Adams County Sheriff's Office engages in "deliberately indifferent training or supervision" when it allows an individual police officer to make the decision to search and seize property.

As Plaintiff has not alleged facts bridging the alleged individual constitutional violation into an official policy or custom, no genuine issue of material fact exists and as such, Darr and Bondell are entitled to judgment as a matter of law on Plaintiff's claims against them in their official capacities.

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     GRANTS Defendants' motion for summary judgment (ECF No. 20).

The Clerk of the Court is directed to enter JUDGMENT in Defendants' favor.

DATED this 2nd day of December, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge